UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CORY D. SADLER,

       Plaintiff,

v.                                      Case No. 1:12-cv-1263

                                       Hon. Janet T. Neff

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
                                  /

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on June 7, 1985 (AR 204).[1] He completed the 12th grade and had previous employment as a cook, tile cutter, and gutter installer (AR 221, 244-47, 262). In July 2009, plaintiff filed applications for DIB and SSI, alleging a disability onset date of October 31, 2008 (AR 71-72, 257).[2] He identified his disabling conditions as back pain, asthma and depression (AR 216, 257). On June 17, 2011, an Administrative Law Judge (ALJ), reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 14-23). This decision, which was later approved by the

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] The Court notes that plaintiff had previously applied for DIB and SSI in December 2008, but that these were denied on April 17, 2009 (AR 69-70). The ALJ denied plaintiff's request to re-open these applications (which the ALJ referred to as an application for SSI) (AR 14, 319-20).

Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d

716, 719 (W.D. Mich. 2007), citing *Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 31, 2008 and had met the insured status requirements of the Act through December 31, 2013 (AR 16). At step two, the ALJ found that plaintiff had severe impairments of degenerative disc disease and asthma (AR 16). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listings 1.04 (Disorders of the spine) and 3.03 (Asthma) (AR 18).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> . . . to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he needs the ability to alternate between sitting and standing while at the work station at will. He can stand for approximately 30 minutes at a time with normal breaks and walk for approximately 30 minutes at a time with normal breaks for a total of four hours in an eight-hour workday. The claimant can sit for approximately 30 minutes at a time with normal breaks for a total of four hours in an eight-hour workday. He should avoid exposure to unprotected heights, moving machinery, and vibrations. The claimant should avoid concentrated exposure to extreme temperatures, wetness, humidity, and pulmonary irritants. He can perform postural activities of occasionally climbing, balancing, stooping, kneeling, and crawling. However, the claimant can never climb ladders, ropes, or scaffolds. He requires work that is simple, unskilled, routine, and repetitive. The claimant requires a low stress job that has only occasional changes in the work environment and occasional decision-making.

4

(AR 18). The ALJ further found that plaintiff was unable to perform any past relevant work (AR 21).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 21-22). Specifically, plaintiff could perform the following jobs in the regional economy (Michigan): cashier (6,000 jobs); assembler (3,500 jobs): and inspector (1,600 jobs) (AR 21-22). Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, at any time from October 31, 2008 (the alleged onset date) through June 17, 2011(the date of the decision) (AR 22-23).

### III. ANALYSIS

Plaintiff has raised four issues on appeal.

**A. The ALJ failed to comply with controlling Sixth Circuit case law in essentially rejecting the opinion of Dr. Cooney, plaintiff's treating physician, without considering the regulatory factors and without adequate explanation.**

Plaintiff contends that the ALJ did not give proper weight to the opinions of his treating physician, John Cooney, D.O., which appear in a questionnaire and "Physical Capacities Evaluation" dated May 4, 2011 (AR 451-58). A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the

5

claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").  Under the regulations, "[t]reating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013), quoting 20 C.F.R. § 404.1527(c)(2).  An ALJ, however, is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773.  In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip*, 25 F.3d at 287.

Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source.  *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The record reflects that Dr. Cooney had treated plaintiff since June 2007 for chronic back pain (secondary to herniated thoracic disc and facet arthritis), depression and anxiety (AR 451).

Plaintiff had a slow but normal gait, no motor, sensory or reflex abnormalities, and full strength in his lower extremities and hands (AR 452). The doctor noted that plaintiff had a limited range of motion and paraspinal spasms in the lower thoracic and lumbar regions bilaterally (AR 4562-53). The doctor stated that these conditions were supported by plaintiff's MRI and x-rays (AR 452-53). Plaintiff was prescribed Cymbalta, a Flector patch, methodone and Valium (for anxiety) (AR 453).

Dr. Cooney characterized plaintiff's back pain as moderately severe, stating that plaintiff gets fatigued from the pain, and is "unable to stay in one position for long periods of time" (AR 453). Dr. Cooney noted that plaintiff had this condition for approximately three years prior to May 2011:

> He was working as a ceramic tiler until 2008. He lost his job as he could not handle the work load. It caused increased pain and lost time at work.

(AR 455). Dr. Cooney considered plaintiff's complaints credible (AR 453).

When asked if plaintiff could perform sedentary work[3], the doctor stated in the questionnaire that plaintiff could not perform such work "unless he was allowed frequent rests and allowed to change position frequently" (AR 454). However, in the Physical Capacities Evaluation, Dr. Cooney stated that plaintiff could perform the exertional requirements of light work, i.e.,

---

[3] The physical exertion requirements to perform "sedentary work" are defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) and 416.967(a).

plaintiff could occasionally lift up to 20 pounds and frequently lift up to 10 pounds[4] (AR 457). Dr. Cooney indicated that plaintiff could sit for one hour and stand/walk for one hour in an eight-hour workday (AR 456). The doctor also indicated that plaintiff would require a 20-minute rest period every hour (AR 457) and that he would have to lie down for some period of time during an eight-hour workday (AR 458).

The ALJ gave little weight to Dr. Cooney's opinion, stating:

> The claimant has a history of back pain. In October 2003, the claimant had magnetic resonance imaging (MRI) scans taken of his lumbar and thoracic spine, which showed no evidence of herniated discs, central spinal stenosis but did show findings of schmorl's nodes (1F/5, 6). In February 2009, the claimant underwent another MRI on his thoracic and lumbar spine, which showed left paracentral herniation at T7-8 and mild facet arthrosis (2F/2, 3). The claimant saw Frances S. Madden, M.D., in March 2009. He stated his thoracic pain began in 2003 and it worsens when sneezing, standing, sitting, or when pressure is on his back (3F/8). The claimant told Dr. Madden that his pain gets better by hanging upside down (3F/8). Dr. Madden stated the claimant did not need to be on narcotic pain medication for this disc problem (3F/8).
>
> In October 2009, the claimant saw E. Malcolm Field, M.D., a neurosurgeon. Dr. Field noted the claimant's back showed some moderate restriction in flexion and mild paravertebral muscle tightness (10F/16). Upon examination, Dr. Field noted the claimant had no sensory loss to any of the modalities, extremities, trunk, and head (10F/16). He noted the claimant had some Schmorl's nodes develop, but no definite disc rupture or something he could help him with (10F/17). Dr. Field stated

---

[4] The regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

surgical intervention was not required but the claimant could go to a pain clinic for facet blocks (10F/17).

As for the opinion evidence, in May 2011, John Cooney, D.O., a family practitioner, noted the claimant's methadone and valium might cause drowsiness (11F/3). Dr. Cooney stated the claimant could not perform sedentary work unless he could frequently rest and was allowed to change positions frequently (11F/4). He stated the claimant could sit for one hour and stand for one hour out of an eight-hour workday (11F/6). Dr. Cooney noted the claimant could occasionally lift up to 20 pounds and frequently lift up to 10 pounds (11F/7). He also stated the claimant would require at least one 20-minute rest period per an hour (11F/7). <u>The undersigned gives little weight to the opinion of Dr. Cooney because it is inconsistent with the medical evidence of record including the subjective reports of the claimant (10F)</u>.

(AR 19-20) (emphasis added).

Based on this record, the Court concludes that the ALJ failed to articulate good reasons for discounting Dr. Cooney's opinion. While the ALJ found that the Dr. Cooney's opinion was inconsistent with the medical evidence of record, the ALJ did not refer to any medical evidence which reflected plaintiff's condition after he saw Dr. Field in October 2009. Similarly, while the ALJ found that the doctor's opinion was inconsistent with plaintiff's subjective reports, the ALJ did not address any particular report, but simply cited an exhibit (10F) which contains plaintiff's treatment with Dr. Cooney's practice from October 2001 through March 2011 (AR 434-50).[5]

The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for

---

[5] The Court notes that these medical records are handwritten and difficult to decipher.

the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985), *quoting Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984).

Given this record, the ALJ failed to articulate good reasons for the weight assigned to Dr. Cooney's opinion. *See Wilson*, 378 F.3d at 545. Accordingly, the ALJ's decision should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should address the portions of the medical record and plaintiff's subjective reports which are inconsistent with Dr. Cooney's May 4, 2011 opinion.

> **B.    Given the lack of any medical evidence supportive of the ALJ's finding that plaintiff can perform the exertional demands of light work, the ALJ's RFC finding cannot be based on substantial evidence.**

The ALJ found that plaintiff had the RFC to perform a limited range of light work (AR 18). Plaintiff contends that this determination is not supported by substantial evidence. The Court disagrees. As discussed, Dr. Cooney opined that plaintiff could perform the exertional requirements of light work, i.e., lift 20 pounds occasionally and 10 pounds frequently (AR 457). While the ALJ gave little weight to Dr. Cooney's opinion, it appears that she agreed with the doctor's conclusion that plaintiff had the capacity to perform light work. In addition, plaintiff gave conflicting accounts regarding his ability to lift. While plaintiff stated in his function report that he could lift between 30 and 40 pounds (AR 284), he testified at the hearing that he could lift only ten pounds (AR45, 55). Accordingly, plaintiff's claim is without merit.

### C. The ALJ's credibility finding is not based on substantial evidence.

Plaintiff contends that the ALJ's credibility determination is flawed with respect to the evaluation of (1) his treatment regimen, (2) his activities of daily living (ADLs), (3) his need to verify his ADLs, and (4) his need to lie down.

#### 1. Legal standard

"It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

#### 2. The ALJ's evaluation of plaintiff's credibility

The ALJ evaluated plaintiff's credibility as follows:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

* * *

After examining the claimant's testimony in light of the objective medical evidence of record, the undersigned notes that the claimant was not fully credible as to the extent of his impairments. Although the claimant received treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature. The claimant testified at the hearing that his doctors want him to attend physical therapy before even discussing the option of surgery. The claimant's medical records also indicate there has been no recent worsening of his condition.

The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant's function report indicates he is able to shower, watch television, play cards, go fishing, and complete "light" chores such as dishes, laundry, and dusting (11E/I). He stated he is able to take care of his dog, prepare simple meals, go shopping, and can handle his own finances (11E/2, 3, 4). The claimant testified at the hearing that he helps his father around the house and drives his mother to chemotherapy on a regular basis. Although the claimant noted in his functioning reports that he does not drive, he testified this is because he lacks an automobile (11E/4). The claimant also only noted one minor difficulty with personal care activities of having trouble putting his socks and shoes on (11E/2).

The claimant's allegation that he must lie down between eight to twelve hours daily is a personal lifestyle choice and is not necessitated by any impairment or prescribed medication documented in the medical evidence of record. Although the claimant has described certain daily activities, which are fairly limited such as being unable to use a vacuum, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled.

First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

12

(AR 19-21).

### 3. Plaintiff's claims regarding credibility

#### a. Treatment regimen

The ALJ determined that plaintiff's claims were not credible, in part because plaintiff received "essentially routine and conservative" treatment. Plaintiff contends that his history of conservative treatment is not a basis to discredit his subjective complaints. The Court disagrees. Courts acknowledge that an ALJ may discount the claimant's credibility if the claimant received only a mild or conservative course of treatment for an alleged disabling impairment. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990) (a claimant's use of only mild medications undercuts complaints of disabling pain). *See also, Conger v. Astrue*, 453 Fed. Appx. 821, 829 (10th Cir. 2011) (where the claimant received "essentially routine and conservative medical care," such treatment "was not indicative of disabling impairments"); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *McKenzie v. Commissioner*, No. 99-3400, 2000 WL 687680 at * 4 (6th Cir. May 19, 2000) ("[p]laintiff's complaints of disabling pain are undermined by his non aggressive treatment"); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (a claim of disabling pain lacked credibility where the claimant relied on a conservative course of treatment). Accordingly, this claim of error is denied.

#### b. Plaintiff's ADLs

Plaintiff contends that the ALJ misconstrued his ADLs. Again, the Court disagrees. The ALJ relied on plaintiff's function report (Exhibit 11E) (AR 279-86) in determining plaintiff's ADLs (AR 20). Upon reviewing the record, the Court concludes that the ALJ fairly summarized

the matters set forth in that function report (AR 20, 279-86). While plaintiff may not have engaged vigorously in all of these activities, such endeavors are not indicative of an invalid, incapable of performing sedentary types of work. *See, e.g., Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 846 (6th Cir. 2005) (substantial evidence supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive appearance" and could "engage in reading and playing cards on a regular basis, both of which require some concentration") (footnote omitted); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability); *Gist v. Secretary of Health and Human Services*, 736 F.2d 352, 358 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability). This claim of error is denied.

          **c.**    **Plaintiff's need to verify his ADLs**

Plaintiff contends that the ALJ erred by discounting his credibility with respect to his ADLs because his alleged limitations "cannot be objectively verified with any reasonable degree of certainty" (AR 21). Plaintiff's statements that he suffers from alleged disabling impairments are insufficient, in and of themselves, to establish a disability. "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." *Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 529 (6th Cir. 1992), quoting 42 U.S.C. § 423(d)(5)(A). "A claimant, however, may rely in part on her own testimony *in combination with* objective medical evidence in order to establish that she is disabled." *Id.* (emphasis in original). *See Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-35 (6th Cir.1987) (objective medical evidence that confirms the existence of pain is required).

Here, the ALJ found that plaintiff's "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty." However, the ALJ did not explain which of plaintiff's limited ADLs were not objectively verified or which medical records contradict plaintiff's alleged limitations. In short, the ALJ did not articulate specific reasons for this wholesale rejection of plaintiff's alleged limitations in his ADLs. Under the circumstances, the ALJ has failed to articulate her analysis of the evidence to allow this Court to trace her reasoning. *See Diaz*, 55 F.3d at 307; *Hurst*, 753 F.2d at 519. On remand, the Commissioner should explain the basis for rejecting plaintiff's limited ADLs as not "objectively verified."[6]

### d. Plaintiff's need to lie down

The ALJ found that plaintiff's need to lie down was not credible because such a limitation was not documented in the medical evidence (AR 20-21). Plaintiff contends that the ALJ erred by characterizing his need to "lie down between eight to twelve hours daily" as a personal lifestyle choice and not necessitated by any impairment or prescribed medication documented in the medical evidence of record (AR 20). Contrary to the ALJ's characterization of this alleged limitation, plaintiff actually testified that on "a bad day" he would spend one-third to one-half of the day lying on his back (AR 50). Plaintiff also testified that on "a good day" he would spend only one or two hours lying on his back (AR 50-51). On questioning by his attorney, plaintiff testified that he had two to three "bad days" in a week (AR 58). Based on this testimony, in any given week, plaintiff would need to lie down a maximum of eight to twelve hours for three days, and one to two hours for four days. The ALJ's characterization of this particular evidence is not supported by

---

[6] The Court notes that while plaintiff cited caselaw in support of his position, defendant did not address this argument. *See* Plaintiff's Brief at pp. 21-22.

substantial evidence. On remand, the Commissioner should re-evaluate plaintiff's credibility with respect to this alleged limitation.

> **D. The Commissioner failed to sustain her burden of establishing that there is other work in the national economy that plaintiff could perform because the vocational expert's testimony conflicts with the *Dictionary of Occupational Titles* [*DOT*] and because the ALJ relief on the VE's response to a hypothetical question which failed to include all of the limitations supported by the record.**

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha*, 927 F.2d at 231. Because the purpose of the hypothetical question is to elicit testimony regarding a claimant's ability to perform other substantial gainful activity that exists in the national economy, the question does not need to include a listing of the claimant's medical diagnosis. "[A] hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb*, 368 F.3d at 632.

> **1. The VE's testimony inconsistent with the *DOT***

In response to the ALJ's hypothetical question involving a person with plaintiff's RFC, the VE responded that such a person could perform unskilled light jobs such as cashier,

16

assembler and inspector (AR 62-65). Plaintiff contends that the ALJ erred by accepting the VE's testimony which, according to plaintiff, was inconsistent with job listings in the *DOT*.

As an initial matter, plaintiff's claim is waived because he did not object to the VE's testimony at the administrative level. At the hearing, plaintiff, through counsel, questioned the VE but did not object to the VE's testimony as inconsistent with the *DOT* (AR 65-68). "The Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court." *Harris v. Commissioner of Social Security Administration*, No. 1:11-cv-1290, 2012 WL 4434078 at 3 (N.D. Ohio Sept. 24, 2012), citing *Hammond v. Chater*, No. 96-3755, 1997 WL 338719 at *3 (6th Cir. June 18, 1997) (finding the plaintiff's failure to raise objections to the VE's testimony waived the argument on appeal). *See, also, Bechtold v. Massanari*, 152 F.Supp.2d 1340, 1347 (M.D. Fla. 2001) ("[Claimant], when squarely presented with an opportunity to object to the characterization by the administrative law judge of the nature of her past relevant employment, failed to do so. Such failure constitutes a waiver of her right to raise the argument before this Court at this time.") *Cf. Harper v. Secretary of Health and Human Services*, 978 F.2d 260, 265 (6th Cir. 1992) (in rejecting plaintiff's contention that the agency misled plaintiff about her right to future appeals, court observed that "[b]ecause the record does not indicate that the issue was raised at the administrative level, we are not in a position to consider the issue").

Even if plaintiff had preserved this issue, the claim of error is without merit. The Sixth Circuit has rejected the argument that the Commissioner is bound by the *DOT*'s characterization of occupations, holding that "the ALJ and consulting vocational experts are not

bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's definitions." *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003). *See Conn v. Secretary of Health & Human Services*, 51 F.3d 607, 610 (6th Cir. 1995) (same). *See also*, *Monateri v. Commissioner of Social Security*, 436 Fed. Appx. 434, 446 (6th Cir. 2011) (noting that while 20 C.F.R. § 404.1566(d) provides that the Commissioner "will take administrative notice of reliable job information" from publications such as the *DOT*, "neither the Commissioner nor the VE has an obligation to employ the *DOT*") (italics added).

### 2. The ALJ's hypothetical question to the VE did not include all of plaintiff's functional limitations

Finally, plaintiff contends that the ALJ's hypothetical question posed to the VE did not accurately portray his limitations. Given the errors discussed in § III.A., III.C.3.c. and III.C.3.d. and the undersigned's recommendation that the Commissioner address these errors on remand, it is possible that the Commissioner could find that plaintiff's limitations are different from those set forth in the hypothetical. Accordingly, if the Commissioner finds on remand that plaintiff's RFC has changed, then she should re-evaluate plaintiff's RFC and determine whether he can perform the unskilled light jobs of cashier, assembler and inspector, or other work in the national economy.

## IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of Dr. Cooney's May 4, 2011 opinion, an explanation for rejecting plaintiff's limited ADLs as not "objectively verified," and a re-evaluation of plaintiff's credibility with respect to his alleged need to lie down during the day. If the Commissioner finds on remand that plaintiff's RFC

has changed, then she should re-evaluate plaintiff's RFC and determine whether he can perform the unskilled light jobs of cashier, assembler and inspector, or other work in the national economy.


Dated: January 28, 2014            /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).